Per Curiam.

In the first of his two causes of action the plaintiff complains that although the defendant village received two bids, one for a rental of $63,000 and the other for “no sum of money,” it rejected the former and accepted the latter. The plaintiff alleges further “that the said purported acceptance of the one bid and rejection of the other was illegal and invalid and constitutes a gross abuse of discretion on the part of said defendants and was arbitrary and capricious; that the said bid *173 purported to be accepted was not the highest bid; that the attempted act of the said defendants, the village of Chagrin Falls and council of the village of Chagrin Falls, Ohio, was contrary to law and that the said attempt to enter into a lease with the defendant, The Chagrin Falls Shopping Plaza Company constitutes the giving for no money of public property to a private use for the benefit of a private corporation for profit; that the purported consideration of the said bid of The Chagrin Falls Shopping Plaza Company is illegal and grossly inadequate; that the plaintiff further avers that the said attempted acts constitute a gross abuse of the corporate powers and functions of "the defendant municipality and its officials and that any such lease attempted to be executed or which has been executed is null and void.”
In its bid the defendant, The Chagrin Falls Shopping Plaza Company, offered no money rental for the lease but agreed to do the following:
“1. Bidder will use the leased property solely and exclusively for parking purposes only, and the general public will not be excluded.
“2. Bidder will set aside and also use in conjunction with said leased property, without separation therefrom by any fence or other structure, approximately that portion of its own real property designated for parking on plans for the building of its shopping center previously submitted to the council. The parking area described in this paragraph will also be open to the general public and will be used solely and exclusively for parking purposes.
“3. Bidder will, at its own cost and expense, grade the leased property to elevations conforming to the finished grade of its own property on which the shopping center will be built and the grades of the properties along Main Street and East Washington Street; provide necessary and adequate storm drainage to the sewer in East Washington Street, and pave the entire leased property with asphalt surface in accordance with plans and specifications to be first approved by the council of the village of Chagrin Falls.
“4. Bidder will also, at its own cost and expense, provide and maintain adequate lighting for said parking area.
*174 “5. Bidder will, at its own cost and expense, maintain said parking area in good and satisfactory condition for the entire term of the lease, and any extension thereof.
“6. Bidder agrees that the village of Chagrin Falls shall have the right, at any time during the term of the lease or any extension thereof, to install parking meters in said parking area at the cost and expense of the village of Chagrin Falls. None of the revenue derived from said parking meters shall belong to the bidder. All expense incident to the maintenance of said parking meters shall be borne by the village of Chagrin Falls.
“7. Bidder agrees that said lease may contain a clause providing for the reversion of said leased property to the village of Chagrin Falls in the event it fails to comply with its covenants to use the leased property solely and exclusively for parking purposes and not to exclude the general public therefrom; said reversion to be without compensation to bidder for any of its costs and expenses incurred in connection with the foregoing improvement.”
In its ordinance authorizing the village clerk to advertise for the lease of the property here involved, the village council prescribed that the lease should be awarded to the “highest bidder.”
Was the lease awarded to the highest bidder?
Assuming, as contended by the defendants, that the consideration for such a lease need not be money, was the bid of The Chagrin Falls Shopping Plaza Company higher than that of the competing bidder for $63,000 for the 25-year period?
The lower courts held that, in the absence of fraud, this was a matter resting in the discretion of the village council.
However, there is nothing in the bid or the lease to show that the consideration offered in the one bid exceeded or even approached the $63,000 named in the other. An analysis of the seven items enumerated in the first bid leaves much in doubt and uncertainty. This bidder insists that consideration may be either tangible or intangible. It concedes that part of its proffered consideration is in the latter category, but contends that this intangible consideration possesses monetary value. If so, how much?
*175 Items one and two of this bid provide in substance that the general public will not be excluded from the parking area. However, this is a privilege the public already enjoys.
Items three and four provide for grading, sewering, paving and lighting the area. These improvements, of course, possess monetary valué. But how much? In neither the bid nor the lease is there anything to answer this question.
In item five the lessee agrees to maintain the area ‘ ‘ in good and satisfactory condition” at its own expense. However, there is no suggestion as to the monetary value involved therein.
Under item six the village retains the right to install and maintain parking meters at its expense. The financial return from this can not, of course, be predicted with accuracy, and the record discloses no estimate whatsoever.
Item seven contains a provision for the uncompensated reversion of the land to the village in the event of the lessee’s breach of the terms of the lease. However, there are two difficulties with this item. In the first place the land already is the property of the village, and, secondly, there is nothing in either the bid or the lease to indicate the probable monetary value of whatever improvements, if any, the lessee may have made on the land.
Hence, as previously observed, the consideration proffered by this lessee may have a monetary value in excess of the $63,000 named in the other bid, but the fatal difficulty is that neither the bid nor the lease discloses any evidence to remove this important matter from the realm of mere speculation.
In view of the foregoing conclusions, it becomes unnecessary to consider the remaining objections interposed by the plaintiff.
The judgment of the Court of Appeals is reversed, and final judgment is rendered for the plaintiff.

Judgment reversed.

Weygandt, C. J., Zimmerman, Taft, Matthias, Bell and Peck, JJ., concur.
Herbert, J., concurs in the judgment.